## ABRAMS et al. v. BRADSHAW.
### (No. 10091.)

Court of Civil Appeals of Texas. Dallas. Jan. 14, 1928.

Rehearing Denied Feb. 18, 1928.

1. **Trial ⬅⬆352(1)—How special issues shall be submitted, considered, and determined is matter of law (Rev. St. 1925, art. 2189).**

Under Rev. St. 1925, art. 2189, providing that in jury cases court may submit cause on special issues, which shall be submitted distinctly and separately and answered separately, it is a matter of law how special issues shall be submitted and how they shall be considered and determined.

2. **New trial ⬅⬆44(1)—Granting new trial for misconduct of jury, as shown by their evidence, is not discretionary with trial court, where reasonable minds could not differ as to facts (Rev. St. 1925, art. 2234).**

Although Rev. St. 1925, art. 2234, places granting of new trial for misconduct of jurors as shown by their evidence within sound discretion of trial judge, this discretion exists only with reference to evidence, where reasonable minds might differ as to facts proven, and never exists where facts are established so conclusively that reasonable minds could not differ.

3. **New trial ⬅⬆52—On motion for new trial in personal injury action, evidence held to show misconduct of jury in discussing and answering special issues with view to carry out agreement to give plaintiff damages (Rev. St. 1925, arts. 2189, 2234).**

On motion for new trial of personal injury case, which had been submitted to jury on special issues under Rev. St. 1925, art. 2189, evidence *held* to show misconduct of jury within Rev. St. 1925, art. 2234, in discussing and answering special issues with view of carrying out agreement to give plaintiff damages.

4. **New trial ⬅⬆52—Refusing new trial where evidence showed misconduct of jury in discussing and answering special issues with view of giving plaintiff damages held error (Rev. St. 1925, arts. 2189, 2234).**

Refusing new trial of personal injury case, submitted to jury on special issues under Rev. St. 1925, art. 2189, where evidence showed misconduct of jury in discussing and answering special issues with view of carrying out agreement to give plaintiff damages, *held* error, notwithstanding language of article 2234 places granting of new trial for misconduct of jury within discretion of trial judge.

Looney, J., dissenting.

Appeal from District Court, Dallas County; Towne Young, Judge.

Suit by Mrs. Otta F. Abrams and husband against H. D. Bradshaw. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellants.

Collins & Houston and Hamilton, Frank & Hamilton, all of Dallas, for appellee.

VAUGHAN, J. The appellants, Mrs. Otta F. Abrams, joined by her husband, Max Abrams, as plaintiffs, brought this suit in the court below against appellee, H. D. Bradshaw, as defendant, to recover damages for personal injuries alleged to have been sustained by appellant Mrs. Otta F. Abrams on the premises owned and operated by the appellee as a garage and automobile saleshouse. Appellants alleged that the automobile owned by appellants was taken by appellant Mrs. Otta F. Abrams to appellee's place of business for the purpose of having same oiled and cleaned, and that she drove it inside of appellee's premises at his invitation, and, while in there, she stepped upon an appliance known as a "creeper," a device consisting of a platform 19½ inches wide by 38½ inches long, resting on four sets of ball bearing roll-

ers, height from top of platform to floor being about 4 inches, alleged to have been negligently left on the floor by appellee, and that she thereby sustained personal injuries and was damaged thereby in the sum of $26,000. Appellee answered by way of general demurrer, general denial, and plea of contributory negligence, in which it was alleged that appellant Mrs. Otta F. Abrams—

"In walking across the floor, she failed to look where she was going, ·but heedlessly proceeded across the floor without taking any note of what she might encounter, and, in choosing to remain in the immediate vicinity of where the work was going on upon her automobile, which was the work she had ordered to be done, and in the prosecution of which a 'creeper' was indispensable."

The following special issues were submitted and answers made thereto:

"Special issue No. 1. Were the agents and servants of the defendant, in leaving the creeper on the floor on the occasion in question in the manner in which they left it, exercising ordinary care to maintain the premises in a reasonably safe condition for the protection and safety of the plaintiff? Answer yes or no. Answer: No.

"If you have answered special issue No. 1 'yes,' you need not answer special issue No. 2; if you have answered special issue No. 1 'No,' then you will answer special issue No. 2.

"Special issue No. 2. Were the injuries received by the plaintiff on the occasion in question proximately caused by the failure of the defendant to exercise ordinary care in maintaining his premises in a reasonably safe condition? Answer yes or no. Answer: No.

"Special issue No. 3. Did the plaintiff observe the creeper in question immediately prior to the time she stepped upon the same? Answer yes or no. Answer: Yes.

"If you have answered special issue No. 3 'Yes,' you need not answer special issue No. 4; but if you have answered special issue No. 3 'No,' then you will answer special issue No. 4.

"Special issue No. 4. Was the plaintiff guilty of contributory negligence in failing to observe the creeper before she stepped on the same? Answer yes or no. Answer: ——.

"Special issue No. 5. Was the plaintiff guilty of contributory negligence in proceeding across the floor in the manner she did on the occasion in question? Answer yes or no. Answer: Yes.

"Special issue No. 6. Was the plaintiff guilty of contributory negligence on the occasion in question in proceeding to take the route she did take to the office? Answer yes or no. Answer: No.

"If you have answered special issues 4, 5, and 6, or either of them, 'Yes,' then you will answer special issue No. 7; if you have answered each of said special issues 4, 5, and 6 'No,' then you need not answer special issue No. 7.

"Special issue No. 7. Was such contributory negligence, if any you have found on the part of plaintiff, the direct and proximate cause of her injuries? Answer yes or no. Answer: Yes.

"Special issue No. 8. What sum of money, if paid now, would reasonably compensate the plaintiff for her reasonable doctors' bills and for her pain and suffering, if any, suffered and to be suffered by her, and for the physical injuries she sustained, if any? Answer: $500."

The findings of the jury in answer to said special issues, being sustained by ample evidence, are adopted as the findings of fact by this court on the merits of the case. Judgment was entered in favor of appellee.

The following propositions challenge the validity of the proceedings had up to and including the rendition of the verdict:

First: "Where the jury found in answer to one special issue that the leaving of a dangerous mechanical instrument on the floor was negligence on the part of the defendant, and there was no allegation or evidence of any other act or thing than the leaving of such instrument being the cause of plaintiff's injury, a finding of the jury in answer to another special issue that such negligence on the part of the defendant was not the proximate cause of the injury is so contrary to the great weight and preponderance of the evidence in the case, and is so unsupported by the evidence, as to require such jury verdict to be set aside."

Fourth: "Since the act of negligence complained of in this case against the plaintiff by the defendant was the leaving on the floor of a dangerous mechanical device, the characteristics of which were unknown to the plaintiff, and over which the plaintiff tripped and fell, it was error for the court to submit special issue No. 3 as to whether or not plaintiff saw the mechanical device; such issue being purely evidentiary."

Fifth: "The findings of the jury in answer to special issue No. 5 are against the great weight and preponderance of the evidence, and are in conflict therewith, in that the great weight and preponderance of the evidence establishes that the plaintiff was exercising ordinary care in walking across the floor on the occasion of her injury."

We have carefully considered the above propositions in the light of the issues raised by the pleadings and the evidence introduced thereon, with result that we failed to find any merit in either one of said propositions. Therefore same are overruled.

By the following propositions appellant presents for our review alleged misconduct of the jury in their deliberations, which was reflected in the verdict rendered:

Second: "The jurors in this case, after retiring to consider their verdict, having agreed before answering the special issues to allow the plaintiff damages, and having attempted to so answer the special issues submitted as to carry out the agreement to give the plaintiff damages, were guilty of such misconduct as to require the trial court to set aside the entire jury verdict and to grant a new trial, and the court erred in refusing so to do.

Third: "The jury in this case, when considering their verdict in the jury room, before answering material issues submitted to them, having discussed at length the legal effect of their proposed answers in order to render a verdict for the plaintiff, were guilty of such

misconduct which affected the verdict as required the entire verdict to be set aside and a new trial granted, and the court erred in refusing so to do."

The alleged misconduct is sought to be reviewed under article 2234, Revised Civil Statutes 1925, which reads as follows:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material."

It will be noted that in effect the misconduct charged is that before the special issues had been answered an agreement had been reached by the jurors to allow appellant Mrs. Otta F. Abrams damages, and thereafter attempted to so answer said issues as to carry out that agreement, and, further, that the jury, before answering the issues submitted, discussed at length the legal effect of their proposed answers in order to render a verdict for the appellant Mrs. Abrams.

What was intended to be accomplished by the Legislature in passing the act authorizing the submission of a cause on special issues becomes a pertinent inquiry. Article 2189, Revised Civil Statutes 1925, provides:

"In all jury cases the court may submit said cause on special issues without request of either party, and, upon request of either party, shall submit the cause upon special issues raised by the pleadings and the evidence in the case. Such special issues shall be submitted distinctly and separately. Each issue shall be answered by the jury separately."

[1] It will be noted that the law with great exactness and care requires that special issues be distinctly and separately submitted by the court. To accomplish what is but an inquiry suggested by the law of reason. This we think may be answered as follows: To the end that there shall be no confusion of the issues submitted, but, to the contrary, each issue submitted should occupy to other issues a separate and independent position that the determination of one issue shall not exert an influence over the disposition of another issue outside of the evidence before the jury applicable to all of the issues. With equal care, the law, through the following provision, "each issue shall be answered by the jury separately," requires that in the consideration of the issues submitted the jury shall answer each separately. This necessarily implies that, in the consideration of the issues submitted, each shall be considered and determined without reference to the result same will have on the disposition of the controversy between the parties or to the effect the disposition of one issue will have on other issues to be or that have been disposed of; that, in answering each special issue, no other influence should be permitted to operate upon jurors in the discharge of their legal duty than the evidence bearing upon the issues submitted. In other words, to secure a finding upon each issue submitted from the evidence alone, free from any bias, prejudice, or any predilection of any of the jurors, each being sworn to render a true verdict in accordance with the law and the evidence. It is, therefore, a matter of law how special issues shall be submitted, and equally so how same shall be considered and determined.

[2] It is true the language of article 2234, supra, places the granting of a new trial under its terms within the sound discretion of the trial judge, which should not be disregarded by appellate courts. This discretion only exists with reference to the evidence where same is such that reasonable minds may be at variance in reaching a conclusion as to the facts proven thereby, and never exists with reference to the proper application of the law applicable to a state of facts established by the evidence so conclusively that there is no room for reasonable minds to differ in reference thereto. The use of the word "material" in said article 2234, supra, undoubtedly has a significant meaning; namely, that a new trial may be granted if the misconduct of the jury be material to the orderly determination of the rights of the parties litigant according to the established forms of law. Therefore, if the evidence introduced established that the jury in their deliberations failed to observe the law in reaching a conclusion on the issues submitted, then such misconduct would be material, as the law governing the conduct of the jury was disregarded, an observance of same being necessary in order to accomplish the purpose for which the law providing for the submission of a cause under special issues was enacted.

[3] Therefore the validity of the judgment of the trial court refusing a new trial on the ground of misconduct of the jury must be determined from the evidence introduced on the issues thus raised. We find that on the hearing of said issues the following material facts were established by the evidence introduced: Five of the jurors, namely, C. L. Alexander, George Rice, J. J. Taylor, R. W. Roberts, and George A. Burton, testified, in reference to the alleged misconduct of the jury, substantially that the members of the jury, before answer had been made to the special issues submitted, agreed that the appellants should recover something, and further agreed that the sum of $500 should be the amount, and that the special issues submitted should be so answered as to give appellant Mrs. Otta F. Abrams recovery for

such sum. That what would be the effect of answering "yes" or "no" to all of said special issues, except No. 8, on said agreement was discussed by all of the jurors, some contending that the effect would be to prevent a recovery by appellants, and others that it would not have that effect; that before the verdict was returned into court on the third day of the deliberations of the jury, an oral understanding was reached by all of the jurors that appellant Mrs. Abrams and appellee each contributed to the accident therefore appellee should be held liable for damages, but, as appellant Mrs. Abrams contributed to her own injury, the amount of damages should be less, as the offense of the appellee should be mitigated, and the appellant should be awarded the sum of $500; that one or two jurors favored a little more and some at first favored less, that in answering the special issues, all of the jurors had in mind the framing of same so that the appellants would recover the sum of $500; that when the jury came to special issue No. 7, a discussion was raised whether or not an affirmative answer on that issue would cut the appellant Mrs. Abrams off from any recovery, and after much discussion among the jury as to this question, the jurors sent a written memorandum to the judge asking him what the effect of such finding would be, and after being instructed by the court that the court could not answer their question and that the effect of their findings was not to be considered by them, the jury had further discussion as to the effect of answering special issue No. 7 in the affirmative, some of the jurors contending that such an answer would cut said appellant off and others contending that it would not, and that some of the jurors, viz., C. L. Alexander, J. J. Taylor, and George Rice, were persuaded as a result of this argument and discussion to answer such issue against their real wishes in the case and against their desires as to how the question should be answered; that each of the five jurors, testifying on the hearing of said motion, stated that in arriving at the answers to the special issues submitted that they did not intend to disregard the evidence, but it was their purpose to make answer in accordance therewith to each of the issues submitted.

[4] Under the above facts, we are of the opinion that misconduct within the meaning of said article 2234, supra, was established in that the jury did not consider and determine from the evidence solely the answers that should be made to the questions submitted separately, but also took into account and considered the effect that the answer to one special issue would have on answers to be made to other special issues, and the making of the agreement, that appellants were entitled to recover in some sum, before considering and answering the special issues submitting other matters than the amount of damages sustained by the appellant Mrs. Abrams and in attempting to make answers to such special issues for the purpose of carrying out said agreement. This holding is within the rule of decision announced in the following authorities: Gulf, C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 276 S. W. 895; Coons v. Culp (Tex. Civ. App.) 278 S. W. 914; Sims v. Sims (Tex. Civ. App.) 296 S. W. 612; Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; So. Trac. Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Letsinger v. Panhandle Ry. Co. (Tex. Civ. App.) 286 S. W. 1107.

We are therefore of the opinion that said cause should be and same is reversed and remanded.

Reversed and remanded.

LOONEY, J. (dissenting). My dissent is based on the proposition that the evidence relied on to establish misconduct of the jury was conflicting, admitted of different conclusions, hence the trial court's action in overruling the motion for a new trial is final, and this court is without authority to hold to the contrary.

The statement of the nature and result of the suit is given by Mr. Justice Vaughan in the majority opinion.

The head and front of the jury's offending, as complained of by appellants, was that, before answering special issues, they agreed to allow plaintiff damages and to frame their answers so as to produce that result.

On this issue, the following conclusions are stated in the majority opinion:

"Five of the jurors, viz., C. L. Alexander, George Rice, J. J. Taylor, R. W. Roberts, and George A. Burton, testified in reference to the alleged misconduct of the jury substantially that the members of the jury, before answer had been made to the special issues submitted, agreed that the appellants should recover something, and further agreed that the sum of $500 should be the amount, and that the special issues submitted should be so answered as to give appellant Mrs. Otta F. Abrams recovery for $500; * * * that, in answering the special issues, all of the jurors had in mind the framing of same, so that the appellants would recover the sum of $500; * * * that what would be the effect of answering 'yes' or 'no' to all of said special issues, except No. 8, on said agreement was discussed by all of the jurors, some contending that the effect would be to prevent recovery by appellants, and others that it would not have that effect."

It may be conceded that these conclusions find support in the evidence, but it is also true that the contrary view finds abundant support; hence I cannot agree that these conclusions accurately reflect the meaning of the entire evidence.

My contention is that the evidence was conflicting on all issues that involved the alleged

misconduct on which appellants relied for a new trial; such being the case, it was within the exclusive province of the trial court to settle the conflict, and, having done so, it cannot be correctly stated that its discretion was abused.

The following may be gleaned from the testimony of these jurors:

From that of Mr. Alexander: The jury decided to give plaintiffs something; they had their main trouble over special issue No. 7, which related to her contributory negligence; would not have answered as he did if he had known it would not give her anything, and particularly with reference to the last question (No. 7); the jurors argued it out and answered the seventh interrogatory "yes," as they did not think it would knock her clean out. On cross-examination, when the court was requested for instruction as to the effect of their answering "yes" to seventh special issue, they were told they would have to answer the issue without regard to the effect their answer would have. He said he did not disregard the evidence; that they weighed the evidence and answered honestly as to what the evidence required, except one (No. 7), and tried to answer that as best he knew how; that he answered "yes" but found out later that a "no" answer was required to give her a verdict; that he exercised his own judgment as to the result of the answer "Yes," and was not persuaded by any one; that he tried to answer special issue No. 1 honestly according to the evidence; answered No. 2 according to the evidence; answered No. 3 according to the evidence; answered No. 5 "yes" from the evidence; answered No. 7 to the best of his knowledge from the evidence. This witness said he was not persuaded nor influenced by any agreement to give her a judgment, and to frame answers to insure result, and answered according to the evidence and charge of the court, and finally said that he paid attention to the evidence in framing answers, and not to any agreement.

From Mr. Rice: The jury agreed to give plaintiff something before answering any of the questions, and tried to answer so as to give her something; a dispute arose in regard to the answer to special issue No. 7; that he would not have answered No. 7 "yes" if he had known it would have defeated plaintiff. On cross-examination: That he answered according to the best of his ability from the evidence; that they believed defendant was to blame, and were willing to put some blame on the plaintiff; that he did not deliberately disregard the evidence in order to frame answers; was willing to put some blame on her (plaintiff); that he knew when they wrote to the judge he would not answer their question, and that they would have to answer the same "yes" or "no" from the evidence; that no one convinced him that they should let the answer ("yes") to No. 7 stand, and did not just shoot in the dark.

From that of Mr. Taylor: On retiring the first day they read the charge of the court; the discussion was general; the jury was divided; no question was answered. On the second day the discussion was general, but less general, the testimony was considered more; the charge was read a number of times, issues considered, and ballots taken to ascertain the sentiments of the jury; did not come to a final agreement until the third morning, when an oral agreement was reached to the effect that, both sides had contributed to the accident, therefore defendant was liable for damages, but, inasmuch as the plaintiff contributed to her own injury, the amount of damages should be less; that the offense of the defendant should be mitigated; that they sought to answer the questions not inconsistently, but at the same time to let the verdict reflect that both parties were guilty of some negligence and to give the plaintiff $500; that in arriving at his conclusion, he was guided solely by the evidence, and from the evidence was convinced that the plaintiff was entitled to $500. After propounding to the court the question in regard to the effect of a "yes" answer to special issue No. 7, and after the court answered that the jury must not consider questions of law, they thereupon discussed the matter thoroughly, and agreed that the word "contributory" certainly could not mean that total responsibility was on the plaintiff; that they thought it divided the responsibility, and that was the answer the jury gave; that he would not have answered them the way he did had he known it would cut her off. Cross-examined, the witness testified that, he reached the conclusions before answering any issue that both parties were at fault and that plaintiff ought to recover something; that they answered question No. 1 according to their view of the evidence, and were not guided by giving the woman something, regardless of the evidence; that it was their intention to divide the responsibility and answered according to the evidence; that the answer to No. 5, finding plaintiff guilty of contributory negligence, was in conformity to the original agreement as to divided responsibility; that the answer to special issue No. 7 was consistent with the answer to No. 1, in that the defendant was partly responsible, and plaintiff was partly responsible and contributed to her own injuries, and they gave an answer consistent with the idea of divided responsibility. In trying to answer so as to carry out the agreement, he did not stultify himself.

From that of Mr. Roberts: They first agreed to give plaintiff something; they did not answer the first question in order to

give her something; did not discuss what effect their answers would have as to her getting something; very little discussion was had on special issue No. 2; agreed on that from the beginning. They first divided on No. 3 and then voted "yes" unanimously; special issue No. 5 was answered "yes" from the beginning, and the jury agreed on No. 6. (This witness raised the question as to the effect of answering No. 7 "yes" that was referred to the court, as mentioned elsewhere.) Witness believed both parties were guilty of negligence; that plaintiff actually caused the accident by stepping on the creeper in the manner she did; and that the defendant was guilty of negligence in leaving the creeper on the floor.

In answer to the direct question, as to whether or not the jurors agreed to frame their answers so as to insure plaintiff getting $500, this juror testified:

"As to your question, whether or not there was an agreement reached then on the part of the jurors to give plaintiff something, and to so frame the answers as to insure that, I would say, 'No, sir.' We tried to follow the issues as they were printed and according to the evidence."

This witness' attitude was that he thought both plaintiff and defendant were guilty of negligence, was in favor of awarding plaintiff $500 damages, but denied that there was any agreement to frame the answers to special issues.

From that of Mr. Burton: They were divided on special issue No. 1, and thereupon left questions Nos. 1 and 2 and answered Nos. 3, 4, and then down including No. 7, just as they were written; that they then tried to get an agreement on No. 1, and witness, who it seemed was opposed to a verdict in favor of plaintiff, said if they would let the answers stand, as previously voted, to questions 3, 4, 5, 6, and 7, he would come over and vote with them on No. 1. In regard to the question of an agreement to frame the answers, so as to insure a verdict in favor of the plaintiff, this witness said:

"No, sir; there never was at any time an agreement among the jurors to give the woman a verdict, and then, in order to carry out that agreement, to so frame the answers to the questions as to insure that result without regard to the answers the evidence required."

This evidence is plainly conflicting as to appellant's main contention—that is, that the jury agreed to allow plaintiff a recovery and framed their answers to insure that result. Jurors Roberts and Burton each deny that any such agreement existed, or that any such course was pursued. Other jurors, at places in their testimony, also deny that such a course was pursued, and whatever else jurors may have testified to, each and all said

that, in answering special issues, they were guided by the evidence.

I therefore submit that this evidence is not only positively conflicting as to the existence, whether or not, of the material facts, but opposite conclusions of fact may be logically drawn therefrom. Article 2234, Revised Statutes 1925, commits to the discretion of the trial court exclusive authority to finally settle such conflicts, and, in my opinion, it can never be correctly said that a trial court abused its discretion when, as in this case, its decision is based on evidence conflicting on all material issues upon which reliance is based to show misconduct of the jury. That this is the undoubted meaning of the statute, is not only readily apparent from its reading, but is the construction given it in repeated decisions of our appellate courts.

In Kalteyer v. Mitchell, 102 Tex. 390, 393, 117 S. W. 792, 793 (132 Am. St. Rep. 889), Judge Gaines, dealing with a similar situation, had this to say:

"In regard to the question of the misconduct of the jury: One of the jurors, upon whose testimony it was proposed to get a new trial for misconduct of the jury, swore that it was agreed to take a vote, and that, as a majority should vote, so should be their verdict; that upon taking a ballot a majority voted for the defendants; and that by reason of such ballot a verdict was rendered for the defendants. Another juror, (there were but two examined) testified that when the jury retired they agreed to take a ballot, but declined to say that they agreed to be governed by the ballot; that the ballot was taken, and that they afterwards passed upon the special issues; but he again declined to say that any juror's vote was influenced by the ballot taken. The statute provides that 'if the misconduct proven, or the testimony received, or the communication made be material, a new trial may in the discretion of the court be granted.' Laws 1905, p. 20, c. 18. We cannot say that the action of the court in refusing a new trial shows such an abuse of discretion as to authorize us to hold that it was error."

Chief Justice Rainey, speaking for this court in the case of Missouri, K. & T. Ry. Co. v. Blalack (Tex. Civ. App.) 128 S. W. 706, 708, in disposing of a similar question, said:

"The statute (the one in question) authorizes a new trial for misconduct of the jury, if, upon examination in open court, the trial judge, in his discretion, is of the opinion it should be granted. This law subverts the doctrine of long standing that the affidavit of a juror would not be heard to impeach his verdict, but the lawmakers were wise enough to leave it to the discretion of the trial judge in granting a new trial. The trial judge in his discretion found that the conduct of the jury in the manner stated did not affect the verdict of the jury. The evidence, we think, supports this finding, and we are not disposed to interfere with the court's ruling. Foley v. Northrup, 105 S. W. 229, 47 Tex. Civ. App. 277.

In San Antonio Traction Co. v. Cassanova (Tex. Civ. App.) 154 S. W. 1190, 1192, Judge Fly disposed of a similar question as follows:

"Undoubtedly, under the provisions of the statute (the one involved here), the burden would rest upon the party seeking to impeach or discredit the verdict, and the judgment of the court on the testimony adduced must have the same force and effect as would his judgment in any other case on the facts; that is, if there is evidence to support it, it cannot be disturbed by an appellate court. The law places the discretion, as to sustaining or overruling the motion for a new trial on the grounds specified in the statute, in the trial court; and appellate courts have no authority to disturb the ruling thereon, unless it is apparent that there has been an abuse of such discretion. This construction of the statute was first announced by this court in Foley v. Northrup, 47 Tex. Civ. App. 277, 105 S. W. 229, and it has been followed by other Courts of Civil Appeals and the Supreme Court. Missouri, K. & T. Ry. v. Blalack (Tex. Civ. App.) 128 S. W. 706; Houston & T. C. Ry. v. Gray (Tex. Civ. App.) 137 S. W. 731; Id., 105 Tex. 42, 143 S. W. 606; Missouri, K. & T. Railway v. Brown (Tex. Civ. App.) 140 S. W. 1172."

Also, see Andrews v. York (Tex. Civ. App.) 192 S. W. 338, 340.

Trial courts must be permitted, in settling questions of conflict in the evidence, to see with their own eyes, hear with their own ears, make use of their own understanding, be guided by their own consciences, and pursue their own process of reasoning, else the discretion lodged with them by this statute will be a dead letter.

Jurors Alexander, Taylor, and Rice, from whose testimony the conclusions of the majority must find support, are in practical accord, but Mr. Taylor is probably more illuminating. His testimony is to the effect that, after more than a day's consultation, the jury, on the morning of the third day, reached an oral agreement before their answers to special issues were written to this effect, that plaintiff and defendant both were guilty of negligence that contributed to the accident; that plaintiff was entitled to recover damages, and they sought to answer the questions consistently, so the verdict would reflect the oral agreement, that is, that both parties were guilty of negligence, and that plaintiff should recover $500; that they tried to answer so as to carry out the idea of a divided responsibility, and were guided solely by the evidence. This witness also said he would not have answered as he did if he had known the answers would have cut plaintiff off from recovery.

It also reasonably appears from the evidence that the delay in answering special issues was caused, not so much by a disagreement over the facts, as it was in regard to the legal effect of their answers; especially was this true with reference to their answer to special issue No. 7, in which they found plaintiff's negligence was the proximate cause of her injuries.

In carrying out the oral agreement as to divided responsibility, the jury made two findings, either one of which defeated plaintiff's right to recover; that is to say, in answering special issue No. 2, they found that defendant's negligence was not the proximate cause of plaintiff's injuries, thus acquitting him of actionable negligence. In answering special issues Nos. 5 and 7, they found plaintiff guilty of negligence that was the proximate cause of her injuries, thus convicting her of contributory negligence. Notwithstanding the jurors were friendly to the plaintiff, they felt constrained under their oaths to make these findings either of which defeated her right to recover.

It should not, in my opinion, be considered a strange or irregular procedure, or misconduct, for jurors, before answering special issues, to consult freely and reach general understandings, nor should the fact that jurors misapprehend the legal effect of their answers, or intend a different result from that reached by the court in rendering judgment, be denounced as misconduct. The function of the jury is to ascertain facts from the evidence, and this without regard to the legal effect of their answers.

From this testimony, the trial court could, and doubtless did, conclude that the answers to special issues were consistently made, based, as jurors testified they were, on the evidence, although, in harmony with the preliminary oral agreemnt to the effect that both parties were guilty of negligence and that plaintiff should recover $500 damages. For if, as jurors testified, they were guided by the evidence, as was their duty, the demands of the law were met, and the verdict was unobjectionable.

There is still another solution the trial court could have adopted that fully justified its action in overruling the motion for a new trial. The court could have held that the testimony of each juror, relied on by appellants to establish misconduct, was itself so inconsistent and conflicting as to justify its being disregarded as a guide to a correct conclusion. These jurors testified, in effect, that they first agreed to find something in plaintiff's favor, and framed their answers to that end; that they would not have answered as they did had they known the effect of their answers would be to defeat plaintiff. They further said that, in framing answers, they were guided solely by the evidence. This testimony is plainly susceptible of the construction of being inconsistent and conflicting; hence it could have been disregarded by the trial court with perfect propriety.

In Easton v. Dudley, 78 Tex. 236, 240, 14 S. W. 583, 585, commenting on the proba-

tive value of testimony of the nature of that now under consideration, the Supreme Court used this language:

"The evidence is no guide to the truth. Had the contradictory statements been made by two witnesses, one contradicting the other, the rule that there exists evidence to support the finding of the court would apply; but these statements are made by the same witness, which make his testimony at least of little value— not enough to justify a reliable conclusion."

To the same effect see Ætna Ins. Co. v. Eastman (Tex. Civ. App.) 72 S. W. 431.

If the doctrine is recognized that verdicts may be impeached by post-trial testimony of jurors, to the effect that they would not have answered the issues as they did had they known the legal effect, a door will be opened for the entrance of fraud and perjury, judgments will be unsettled, the administration of justice demoralized and rendered farcical. This evil was recognized early in our judicial history, and was denounced by our Supreme Court.

In ,Boetge v. Landa, 22 Tex. 105, 108, the Supreme Court, through Judge Bell, said:

"We cannot conceive that any but unworthy motives could influence a man to declare solemnly in open court, that he had assented to a verdict, and then to proclaim on the corners of the streets, that he had been intimidated and coerced into an assent to the verdict. The judge below ought not to have given audience to the affidavit of the juror under such circumstances, and might properly have punished his contemptuous trifling with the time and authority of the court."

While the law has been amended (since this decision) permitting jurors to testify on motions for new trial, yet the change in the law did not remove the corrupting tendency of such practice. The legal effect to be given findings of the jury is a question of law exclusively for the court. It was therefore immaterial what the jury intended or expected as a result from their answers. Their disappointment over the result, expressed after the trial, cannot be classified as misconduct, nor held a ground for new trial. This subject is, to my mind, of the greatest import to our jurisprudence. There has grown up, under the amendment of 1905, a regular practice of seeking new trials on alleged misconduct of jurors, supported exclusively by their testimony.

Prior to this amendment, jurors in civil cases were not permitted to impeach their verdicts. That this was the prevailing public policy on that subject is shown by repeated decisions of our Supreme Court, among others, the following: Campbell v. Skidmore, 1 Tex. 475; Mason v. Russell, 1 Tex. 721; Boetge v. Landa, 22 Tex. 105; Ellis v. Ponton, 32 Tex. 435; Galveston, H. & S. A. Ry. Co. v. Roberts (Tex. Civ. App.) 91 S. W. 375.

The evil sought to be remedied by the amendment was evidently that at times jurors were guilty of misconduct and had received communications and evidence in an irregular way, under circumstances not susceptible of proof other than by the jurors themselves; hence the amendment was adopted to meet such cases as a means of protecting the rights of litigants from irreparable injury.

The language of caution employed by the Legislature in the amendment, to wit, " * * * and if the misconduct proven, or the testimony received, or the communication made, be material, a new trial may in the discretion of the court be granted," indicates that it is only when the matters involved are material that the statutes should be employed, and, further, that the question of granting or refusing new trials is committed to the sound discretion of the trial judge.

This change in the statute, subverting as it did old rules and precedents, was received with apprehension as to its results by the courts. This is evident from expressions found in early decisions thereunder. In Foley v. Northrup, 47 Tex. Civ. App. 277, 282, 105 S. W. 229, 231, Judge Fly used this language:

"The mode of procedure allowed by the trial court is a novel one and one we fear that will be productive of no good results, but it is sanctioned by a law passed by the Twenty-Ninth Legislature (General Laws Texas 1905, p. 21, c. 18). * * * There is a clause in that law which sets aside ancient rules, and subverts precedents, but which gives the discretion to the trial judge to grant or refuse the new trial."

Again, in Kalteyer v. Mitchell (Tex. Civ. App.) 110 S. W. 462, this language was used:

" * * * The statute (General Laws 1905), which permits the dangerous practice of impeaching and destroying a verdict of a jury by testimony of members of the jury has a saving clause which places the granting of a new trial on the ground of misconduct of the jury in the discretion of the trial court, and this court will never interfere with the exercise of such discretion unless there appears a gross abuse of the same."

While the courts received this amendment with apprehension and dread as to future results, they found the saving clause in the act to be the provision that committed to the discretion of the trial judge the granting or refusing of a new trial thereunder. I am emphasizing the importance of this saving clause, for, unless it is respected, the practice rapidly growing up, of appellate courts lightly disregarding the exercise of this discretion by trial courts, will not only demoralize the administration of justice, but menace the right of trial by jury.

The authority most frequently cited by appellate courts, where cases are reversed because of misconduct of the jury, is Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W.

606. Among other things, Judge Brown, who spoke for the Supreme Court in that case, said:

"If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside."

A careful reading of this case will disclose that the language quoted from Judge Brown is dictum, and for that reason it may not have been as carefully chosen as if the case had turned on that point. But, whatever else was in the mind of Judge Brown, it is not to be believed for a moment that so eminent a lawyer as he could have made the blunder of claiming for the Supreme Court any authority whatever to settle controverted issues of fact.

However, there has evolved from this language a doctrine that has been applied by the Commission of Appeals in a number of cases, notably in Southern Traction Co. v. Wilson, 254 S. W. 1104, and in Moore v. Ivy, 277 S. W. 106, as authority for reversing both the Courts of Civil Appeals and trial courts, on the facts. While I am convinced this criticism is just, it is not intended as in any sense a reflection on the legal ability of the splendid men who wrote the opinions in the cases or who participated in the decisions.

It is an axiom of our jurisprudence that the jurisdiction of the Supreme Court is limited to questions of law only; that it is not authorized to undertake the review of questions as to the existence of evidence to support findings, verdicts, and judgments, unless there is a reasonable doubt as to the existence, whether or not, of any evidence to support such findings, verdicts, and judgments. The jurisdictional boundary of our Supreme Court, as definitely fixed in the Constitution and statutes, should be maintained as steadfast as the hills, and should never become unstable, as the waves.

If, by the employment of casuistry or refined reasoning, testimony of jurors, called as witnesses on motions for new trials, is lightly brushed aside, and findings of trial judges on controverted issues ignored, not only will the discretion to grant or refuse new trials, lodged with trial judges by the statute in question, be destroyed, but in the end our jury system itself will receive a serious blow. Jurors and trial judges are by no means infallible; being human, they are as prone to err in judgment as the sparks fly upward, but, by the test of an age-long experience, their judgment on the facts, because of a superior opportunity to learn and understand the facts, has proven the best means of attaining justice yet discovered.

For the reasons herein indicated, I am of the opinion the judgment of the trial court should have been affirmed.