## TEXAS EMPLOYERS' INSURANCE ASSOCIATION v. CHOCOLATE SHOP, Inc.*
### No. 2445.

Court of Civil Appeals of Texas. El Paso.

June 19, 1930.

Rehearing Denied July 10, 1930.

J. H. McBroom and Fryer & Cunningham, all of El Paso, for appellant.

J. W. Morrow and Jones, Goldstein, Hardie & Grambling, all of El Paso, for appellee.

WALTHALL, J.

This suit was brought by Texas Employers' Insurance Association, a corporation, against the Chocolate Shop, a corporation, for damages for the death of Joe (Jose) Rey. The suit is brought under subdivision 6a of article 8307 of the Workmen's Compensation Law, Revised Civil Statutes.

The petition shows that the appellant was the insurer under the Workmen's Compensation Law of the Consumer's Ice & Fuel Company, a subscriber to said law, and holding a compensation and liability policy of insurance thereunder; that on July 23, 1928, Jose Rey, an employee of the Consumers' Ice & Fuel Company, was killed in an elevator accident while delivering ice for the Consumers' Ice & Fuel Company to the Chocolate Shop. Claim was made to the Industrial Accident Board and compensation was awarded to Jose Rey's surviving wife and minor children, naming them, and to deceased's mother.

Appellant brought this suit on behalf of itself, and the widow, minor children, and mother of deceased, and alleged that on the 23d day of July, 1928, Jose Rey was engaged in delivering ice to the Chocolate Shop, a customer of the Consumers' Ice & Fuel Company, his employer; that, while delivering ice to the basement through the street elevator, as directed by appellee, said elevator tipped and turned over as a result of defects in certain parts and appliances of the elevator, thereby throwing Jose Rey to the basement, and a block of ice fell on him and injured him in such way that he died from such injuries; that his death was the result of appellee's negligence, specifically set out in the petition, and submitted on special issues to a jury hereinafter stated.

*Writ of error granted.

Appellee answered by general demurrer, general denial, special denial of any act or acts of negligence on its part, and pleaded contributory negligence on the part of Jose Rey, as more fully appears from the issues of fact submitted to the jury.

The jury found:

1. The construction of the guide rail or rails of the elevator as constructed and maintained at the time of the accident was reasonably proper and safe.

2. and 3. As to the issues of negligence in the maintenance of the elevator for use, and proximate cause, not answered.

4. Defendant had no knowledge of the alleged defective condition, if any, of the guide rail or rails, nor should have had notice of same by the exercise of ordinary care.

5. The deceased, Jose Rey, did not know, or by the use of ordinary care should not have known, of the defective condition, if any, of the guide rail or rails.

6. The defective condition, if any, of the guide rail or rails, was open or obvious to Jose Rey.

7. The brake on the elevator was not properly set at the time the load was placed thereon.

8. Jose Rey or the helpers working with him at the time of the accident failed to see that the brake on the elevator was properly set before attempting to load ice on the platform of the elevator.

9. The failure of Jose Rey or his helpers to see that the brake on the elevator was properly set before attempting to load ice on the platform was negligence.

10. Such negligence (as in question 9) was a proximate cause of the injury and death of Jose Rey.

11. Jose Rey, or his helpers, at the time of the accident, loaded the ice on one side of the elevator platform.

12. It was not negligence on the part of Jose Rey or his helpers to load ice on one side of the elevator platform.

13. No answer as to proximate cause of negligence.

14. The jury answered "nothing" on the inquiry as to reasonable compensation to the widow, children, and mother of Jose Rey, on account of his death.

The verdict was received by the court and judgment entered for appellee, and from which judgment this appeal is prosecuted.

### Opinion.

■ The first five propositions, on various grounds, submit that the case should be reversed because of misconduct of the jury in making their several findings on the facts submitted to them. The several propositions, in effect, submit misconduct for a jury to an-

swer special issues with a design to effect a general verdict; misconduct to first determine the effect of their answers before voting on their answers to determine what the result a given answer would be, and then answer in such manner as to find a result that would be in favor of defendant; misconduct to first determine that the jury would give defendant a verdict and from such determination form their answers so as to conform thereto; where the evidence showed that the jury first decided on the judgment it wanted to enter, misconduct to then answer with a view to accomplish such result; where the jury was prejudiced against plaintiff so that plaintiff did not receive a fair and impartial trial, such amounted to misconduct on the part of the jury.

The ground in appellant's motion for a new trial is "because the evidence shows, from an examination of the jurors, (on the hearing on the motion) that although the case was submitted on special issues, the jury went out and first decided that they should find for the Chocolate Shop and then proceeded to answer the questions so that there would be no liability against the Chocolate Shop." On that part of the case the court heard all the evidence offered, the statement of four of the twelve jurors. After hearing the evidence on the motion, the court "was of the opinion that the evidence, as introduced, did not show misconduct of the jury," and overruled the motion, alleging misconduct, to which appellant excepted and took its bill.

From several pages of the evidence heard on the motion, appellant presents a few quotations therefrom in its brief, and submits that the evidence shows such misconduct on the part of the jury as to destroy the rights of appellant to an impartial trial. We have carefully read all of the evidence in the entire record, and especially that heard on the motion charging misconduct on the part of the jury. Probably the evidence does show that the jury first considered the entire case before taking up severally each of the issues submitted, and from such general view concluded that the elevator, as maintained, was in a reasonably proper and safe condition, or that Jose Rey and his helpers, in putting the ice in the basement over the elevator as they had been doing for a great length of time, were as much in fault in not seeing that the elevator was in proper working order, if it was not, or at least knew as much of the condition of the elevator, as the Chocolate Shop's manager, and, after a conclusion from the evidence, as a whole, on some one or more of the ultimate facts, answered the several remaining questions in detail so as to conform their answers to their general conclusion. We cannot say that such method of reaching a verdict shows misconduct or grounds for reasonable doubt as to the purity of the verdict. The trial court submitted a number of

questions to the jury; many of them, though in different verbiage, are of the same general import and bear upon the primary question as to the liability of the defendant. Other questions were necessary and proper, but when the jury has, on due consideration of the evidence, once determined the one determinative or ultimate question upon and around which all the others necessarily revolve and depend, to avoid a conflict in their findings, it would hardly seem reversible for the jury to undertake to harmonize the remaining answers thereto without necessarily being guilty of misconduct in doing so. The trial court heard the evidence and found against appellant's contention as to misconduct of the jury.

We consider a verdict reached as above—that is, by first finding that one side was not at fault, as charged in the first issue, and concluding from such finding that the side not at fault should have the verdict—is quite different from cases where it is shown that the jury first agreed that one party should recover regardless of the facts and that they would make findings so as to accomplish such agreement, as apparently appears to be the case in Bradshaw v. Abrams et al. (Tex. Com. App.) 24 S.W.(2d) 372, to which we are referred, in which the Court of Civil Appeals [2 S.W.(2d) 917] found on the trial of the motion alleging misconduct that the members of the jury, "before answer had been made to the special issues submitted, *agreed* that the appellants should recover something, and further *agreed* that the sum of $500.00 should be the amount, and that the special issues should be so answered as to give appellant, Mrs. Otta F. Abrams, recovery for such sum." There being a conflict in the evidence in that case as to such agreement, a dissent was noted on the ground that it was the province of the trial court to settle the conflict, and, having done so, it could not be correctly stated that its discretion was abused.

The question here is not one of conflict in the evidence on the question of misconduct, but whether the misconduct as charged has been established as a matter of law, and whether it is reasonably doubtful whether such misconduct affected the verdict in a material way. The trial judge acted promptly and fairly in hearing all the evidence in open court offered on the motion, and found that the evidence did not show misconduct. We think no abuse of discretion is shown.

The best we can get out of the evidence on the hearing on the motion, on the point at issue here, using expressions of the jurymen, is that the jury first, "decided on just what we thought about the elevator, the condition of the elevator, * * * When we went in the jury box (room) in a few minutes we taken a vote as to whether the elevator was in the fault or not and of course we voted.

* * * They all voted that it was not the fault of the elevator."

Another juror: "As to what I mean by saying we answered in two or three minutes—I mean the question in the mind of the jury, as soon as they sat down, is, well, the Chocolate Shop gets it, that is all there is to it, we have got to answer all there is to it, we have got to answer the questions. As to whether we answered all of the questions so as to make the Chocolate Shop get it—I will say, well, I suppose so. * * * As to whether that was my idea—I will say, well, I imagine it was, we went over one by one to see how it jibed with the verdict reached. Our verdict was reached, we found for the Chocolate Shop, and we answered the questions so as to conform with the verdict. As to whether the first thing that came up was a vote on the first question, as to whether the elevator was out of fix or was defective—I will say that is way back and I can't remember, except it was taken and discussed backward and forward. Absolutely we undertook to answer the questions we voted on as we understood the evidence and the charge of the court. We felt that the Chocolate Shop was entitled to the judgment, but I can't say that we all agreed before we started voting on these questions, that we would so answer them for that effect. * * * We answered the questions to conform to that agreement. I don't think we agreed on that a couple of minutes after we got in the jury room, we were in there twenty minutes. When we agreed on that we answered the questions accordingly, that is, to reach that conclusion."

Another juror: "We went out there and everybody was practically agreed as soon as they went in the jury room as to the liability. As to whether we all concluded we were for the Chocolate Shop as soon as we got in there —well, I won't say. Put it that way, we of course saw there was no case against the Chocolate Shop. As to whether we answered the questions to reach that conclusion—I will say that was the idea, no liability on the part of the Chocolate Shop. We were answering the questions accordingly with that in mind. The idea was that the jury first considered whether or not the Chocolate Shop was liable, and finding it was not then they answered the questions accordingly."

We believe the instant case presents a different state of facts to that of the Gulf, C. & S. F. Railway Co. v. Harvey (Tex. Com. App.) 276 S. W. 895, in that here, the jury having found that the Chocolate Shop was not liable as in one or more of the issues submitted, their subsequent efforts seem to have been to harmonize the subsequent findings rather than to give the defendant a judgment. Our conclusion, we admit, is a charitable view to be taken of the situation, in view of the finding of the trial

court on the motion. Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

We have concluded from the evidence offered on the hearing of the case, other than the motion, that a verdict for either plaintiffs or defendant could be sustained. Experts on elevators, and the proper uses of them, testified on both sides. The propositions as to misconduct are overruled.

■ We do not think the evidence shows a prejudice against the plaintiffs as submitted in the fifth proposition. It does show that some members of the jury had personal sympathy for the widow and children of Jose Rey, which was expressed, as one juryman said it was not discussed but was "merely mentioned after the verdict had been decided." The evidence shows that some of the individual jurors, through sympathy for the widow and children, would like to have given something to them, but the evidence shows that they realized they could not do so not through prejudice against the insurance company, but the facts as they found them would not permit.

■ Appellants submit that under the facts of this case Jose Rey was an invitee and the doctrine of res ipsa loquitur applies; that is, the thing (or affair) speaks for itself. There are instances in which the circumstances surrounding an occurrence and giving character to it are held, if unexplained, to indicate the antecedent or coincident existence of negligence as to the efficient or producing cause of the injury complained of. These are the instances where the doctrine res ipsa loquitur is applied.

It is often difficult to determine when the maxim is to be applied. We can hardly see the force of the maxim here if it has application. Jose Rey was operating the elevator at the time of the accident, and had been for some years. The cause of the tilting of the elevator to one side was well known, and alleged, in substance, to be an improper and unsafe construction of the guide rail of the elevator as same was maintained at the time of the accident, and so submitted to the jury. It is submitted that Jose Rey, though not an employee of the Chocolate Shop, was an invitee of the use of the elevator, and that it was the duty of the Chocolate Shop to keep same as to him in a reasonably safe condition. Without discussing the question, under Foster Lumber Co. v. Rodgers et al. (Tex. Civ. App.) 184 S. W. 761, we assume that the Chocolate Shop owed Jose Rey the duty of ordinary care to keep its elevator in a reasonably safe condition. The burden of proof rested on plaintiff upon the issues of negligence of the Chocolate Shop and of due care for his own safety exercised by Jose Rey. It must show how the accident occurred by which Jose Rey was injured. It may be that some

of the circumstances causing the accident may appear from the character of the accident itself; but proof of the accident and injury alone would not be sufficient prima facie to authorize a recovery.

We have carefully considered the evidence, and have concluded that the record does not show reversible error.

The case is affirmed.

HIGGINS, J., did not sit in this case.