**DOORNBOS et al. v. LOONEY et al.**

No. 3946.

Court of Civil Appeals of Texas. Beaumont.

Jan. 8, 1942.

Rehearing Denied Feb. 18, 1942.

H. C. Keen, of Beaumont, for appellants.

W. T. McNeill and Lamar Cecil, both of Beaumont, for appellees.

O'QUINN, Justice.

On the 9th day of June 1938, appellants, C. Doornbos, Mrs. Jennie Doornbos, and Emma and Richard Doornbos, were injured in a collision on the Beaumont-Port Arthur highway in Jefferson county between an automobile in which they were riding and a truck owned by appellees, F. S. Looney and Charles Bergin, which at the time of the collision was being operated in due course of their business by their servant, appellee, J. C. Brannon. This was an action by appellants against appellees for the damages suffered by them in the collision. Answering special issues, the jury convicted appellees of negligence proximately causing appellants' damages in failing immediately prior to the collision "to keep a proper lookout" for appellants' automobile, and gave the answer, "None" to the issue submitting the measure of damages of appellants, C. Doornbos, Jennie Doornbos, and Richard Doornbos, and awarded appellant, Emma Doornbos, damages in the sum of $10. The issues of contributory negligence were found by the

jury in appellees' favor, and the jury found that the collision was not an unavoidable accident, with this additional notation: "It was not an unavoidable accident due to the negligence of all parties involved." We give special issue No. 33: "From the preponderance of the evidence what expense, if any, has been reasonably and necessarily incurred as a direct and proximate result of said collision by the Plaintiff, C. Doornbos, for medical treatment, if any, x-ray, if any, hospital bills, if any, medical supplies, if any, and a brace?" To this question the jury gave the answer: "$732.25 Refer to last Page", and on the last page the jury made the following notation: "Special Issue #33. Note: Total amount of expenses incurred by the plaintiffs amounted to approximately $1464.50, as we find negligence on both sides, we the Jury find that the amount of $732.25 or 50% of the expenses incurred a reasonable compensation." On the verdict, judgment was that appellants "take nothing" against appellees, and that appellees "go hence with their costs without day," from which this appeal was regularly prosecuted.

We give rule 306 of Rules of Practice and Procedure in Civil Actions: "Recitation of Judgment.—The entry of the judgment shall contain the full names of the parties, as stated in the pleadings, for and against whom the judgment is rendered, and shall carefully recite the finding of the jury, or the several findings, if more than one, upon which the judgment of the court is based." This rule is simply old rules 63 and 64 for district and county courts combined, but otherwise unchanged. The final judgment herein made only the following recitation of the court's fact findings:

" * * * the cause having been submitted to the jury on special issues, the jury on their oaths on March 7th, 1941, having answered said special issues submitted to them or as many of such special issues as were necessary and proper under the circumstances, and such verdict having been duly received by the Court and the jury discharged, and the Court being of the opinion that upon the answers made by the jury to the special issues submitted to them that plaintiffs are not entitled to take anything by reason of their suit herein and that all costs of court should be adjudged against them." Appellants make against this judgment the assignment that

it was fatally defective in that it failed "to recite the findings of the jury." The effect of appellants' proposition, if meritorious, would be to declare the judgment appealed from interlocutory, and not final. It is our conclusion that this judgment is in the strictest sense a final judgment. It contains the full names of the parties, as stated in the pleadings, for and against whom the judgment was rendered. No issue was left by the judgment undetermined and not adjudicated by the court in disposing of the parties and their rights. The judgment recites that the verdict of the jury was received and the jury discharged and that, upon the answers made by the jury to the special issues, the court was of the opinion that appellants were not entitled to take anything by reason of their suit. It seems to us that the court's judgment constitutes a substantial compliance with Rule 306, supra. This conclusion conflicts in no way with the doctrine announced by our Supreme Court in Fitzgerald v. Evans & Huffman, 53 Tex. 461, and Kinney v. Tri-State Tel. Co., Tex.Com. App., 222 S.W. 227, cited by appellants on this point.

Appellants present the point that the jury was guilty of misconduct in making its answers to the special issues submitting their measure of damage, in that the jury considered the legal effect of its answers in returning its verdict. On the undisputed evidence, appellants suffered serious bodily injuries in the collision, but, notwithstanding the extent of their injuries, the jury found that they had suffered no damages. But since the jury found that appellants were guilty of contributory negligence, under the holding of our Supreme Court in Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334, this finding does not convict the jury of misconduct. Nor was the jury guilty of misconduct in returning its answer to special issue No. 33, supra. There was no fact issue as to the amount of the expense "reasonably and necessarily incurred" by appellants as a proximate result of the injuries suffered by them in the collision; this expense amounted to $1,464.50. Under its verdict, convicting appellants of contributory negligence, they were not entitled to recover anything on this count of their damages, notwithstanding the jury by its verdict undertook to give them one-half of this sum. Clearly the jury did not under-

stand the legal effect of its verdict, and its error in construing its verdict was in·appellants' favor.

█ The jury's verdict was in no sense a general verdict. The case was submitted on special issues, and on the evidence on motion for new trial, the special issues were answered on the preponderance of the evidence, as each juror understood the evidence. We think it clearly appears on the face of the verdict that, in finding appellants had suffered no damages, the jury considered the legal effect of its answers to the special issues submitted to them, otherwise, on the undisputed evidence, the finding of no damages could not have been returned. But the opinion of the Supreme Court in Southern Pine Lumber Co. v. Andrade, supra, clearly holds that, in considering the legal effect of its answers in this particular respect, the jury was not guilty of misconduct, and in returning the answer "None" the jury did not return a general verdict.

█ In finding against appellants on the issues of contributory negligence, by its answer to special issue No. 13–X the jury found that C. Doornbos allowed Emma Doornbos, the driver, to turn off the highway sharply to her right, and without giving any signal; by its answer to special issue No. 25–X, that immediately prior to the collision Emma Doornbos reduced the speed of the car which she was driving without any warning of her intention to do so; and by its answer to special issue No. 31–X, that immediately prior to the collision in question Emma Doornbos failed to keep a proper lookout for vehicles in her rear before altering the course of her automobile. Appellants assign error that these findings of the jury are without support in the evidence. The issue of whether C. Doornbos allowed Emma Doornbos, the driver, to turn off the highway sharply to her right, and without giving any signal, is immaterial in support of the judgment. On the undisputed evidence all appellants were engaged in a joint enterprise, and therefore the findings of the jury upon the contributory negligence of Emma Doornbos barred recovery by all appellants.

The following summary of the evidence, which we take from appellees' brief, supports the findings of the jury on issues 25–X and 31–X: "Emma Doornbos, before entering the Beaumont-Port Arthur road, had to wait at Nederland for the Looney-Bergin truck to pass her. Not being satisfied to follow behind this truck, she passed it. * * * The Doornbos car had passed appellees' truck very shortly before the collision, and it is admitted by Emma Doornbos and Cornelius Doornbos, and in fact by all concerned, that they knew the truck was behind them and fully realized its presence upon the highway a very short distance in the rear. Emma Doornbos was told to turn off the road by her father and she did so, testifying that she slowed down the speed of her car before turning. It was necessary for her to slow down her car before turning, because she said that she turned to her right off the highway at an angle of about forty-five degrees, and she further said that before her father told her to turn she was going between 40 and 45 miles per hour; that when her father told her to stop she took her foot off the accelerator and put her foot upon the brake. J. C. Brannan testified that after the Doornbos car passed his truck it did not get very far in front of him and that he was proceeding at a rate of speed of approximately 30 miles per hour. He stated, in response to the question inquiring as to whether or not he saw hands stuck out on both sides of the Doornbos car, that he never did see any signal at all. Charles Bergin testified that there were single tire marks on the highway at the scene of the accident 'where the rubber had been worn off from the tires sliding on the pavement'. These marks were made by the Doornbos car upon the pavement. These physical facts demonstrate that the Doornbos car retarded its speed suddenly before cutting off the highway at a forty-five degree angle. That this is true is shown by the testimony of Brannan. The record reveals that before the collision, the Doornbos car was going between forty and forty-five miles per hour and the Looney-Bergin truck around thirty. When Brannan looked at his rear view mirror the Doornbos car was fifty or sixty feet ahead of him, and when he looked back at the road it was only about six feet ahead of him. They were undoubtedly going faster than he was since they had just passed him a short time before the accident, and the car must have been stopped rather suddenly since, when Brannan looked back at the road, after looking in his rear view mirror, it was just about six feet in front of him. C. Doornbos testified that the car was turned at an angle of from twenty-two

to forty degrees in front of the gate at which William Doornbos was standing, and that his daughter put on the brake close to the gate. He testified that the car was stopped with the front end of it facing at an angle of between twenty-five and forty-five degrees, with the rear end about one and a half feet off the highway. * * * The collision occurred close to the gate and she testified that her car had come to a complete stop when she was struck by appellees' truck."

■ The evidence also supports the jury's finding that C. Doornbos failed to keep a proper lookout for the approach of vehicles to his rear immediately prior to the collision. On that issue, he testified: When asked about the position of appellees' truck immediately before the collision, he replied: "I didn't know it was a short way behind us; he may have stopped somewhere; I didn't know." He testified that he saw the truck after his daughter had passed it, and that his automobile had travelled only about 1400 feet between the time it passed appellees' truck and the time of the collision; that he had an idea that maybe there were cars behind him at the time he ordered Emma Doornbos to make the turning movement of his automobile.

■ Although the jury found by its answer to question No. 1-X that C. Doornbos ordered the driver of his automobile to turn off the highway at a place where there was no intersecting road or street, yet they found that this act by him was not negligence; therefore if question 1-X was error as to form, the error was immaterial.

■ We give special issue No. 7-X: "Do you find from a preponderance of the evidence that C. Doornbos failed to keep a proper lookout for the approach of vehicles to his rear immediately prior to the collision in question?" The parties riding in this automobile were engaged in a joint enterprise, therefore the court did not err in placing on C. Doornbos the duty of keeping a "proper lookout." Special issue No. 7-X was not duplicitous in that it inquired whether C. Doornbos failed to keep a proper lookout, and whether such failure was immediately prior to the collision. The statement "immediately prior to the collision" simply fixed the time of the inquiry. Rivers v. Westbrooks, Tex.Civ.App., 126 S.W.2d 46.

By questions Nos. 8-X and 9-X, the court submitted to the jury the issues of whether or not the failure of C. Doornbos to keep a proper lookout was negligence, and whether such negligence was the proximate cause of the collision. Appellants assign against these two issues that they were on the weight of the evidence. These exceptions are overruled without further comment.

■ We have referred above to special issue No. 25-X. We overrule without further comment appellants' assignments that this issue was on the weight of the evidence.

We give special issues 26-X: "Do you find from a preponderance of the evidence that Emma Doornbos' reducing the speed of the car which she was driving immediately prior to the collision in question, without any warning of her intention to do so, was negligence?"; and special issue No. 27-X: "Do you find from a preponderance of the evidence that the negligence of the said Emma Doornbos in reducing the speed of the car which she was driving without any warning of her intention to do so was a proximate cause of the collision in question?" Appellants present the objections to these issues that "as presented were a charge upon the evidence, could constitute no defense, calculated to confuse and mislead the jury, in connection with other issues and in connection with the presumption expressed in said issues that the driver did reduce the speed of the car without any warning." These exceptions are overruled.

■ We give special issue No. 31-X: "Do you find from a preponderance of the evidence that immediately prior to the collision in question Emma Doornbos failed to keep a proper lookout for vehicles in her rear before altering the course of the car which she was driving." This issue was not on the weight of the evidence, nor was it subject to any of the exceptions urged against it. Also, without copying them, we overrule the exceptions against special issues 32-X and 33-X, that they were on the weight of the evidence, etc.

■ Appellants assign error against the refusal of the court to permit the juror Fagg, when offered by them as a witness on their motion for a new trial, to testify as to the jury's answers to special issues 32, 33, 34 and 36, which issues submitted the measure of damages of the respective

plaintiffs, on the theory that the jury knew the effect of its answers to these questions. This issue, which appellants attempted to raise by the testimony of the witness Fagg, was immaterial, as we have already held, on authority of Southern Pine Lumber Co. v. Andrade, supra. The jury's answers to these issues were against all the testimony, and were clearly returned on the jury's understanding of the effect of its findings, convicting appellants of contributory negligence.

From what we have said, it follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.

## On Rehearing.

Appellants say that they rest their contention that the jury was guilty of misconduct in considering the legal effect of its "answer to Special Issue No. 33, wherein the jury said: 'Total amount of expenses incurred—$1,464.50 as we find negligence on both sides we, the jury, find that the amount of $732.25 or 50% of the expenses incurred a reasonable compensation.' In addition to this there is the testimony of the juror, Fagg, which was set forth in the original brief, but certainly this is conclusive evidence that the jury did not consider the legal effect of their answers."

The juror Fagg testified:

"Well, we figured that half of the expense would be a reasonable amount and that is what we put down there.

"Q. Did you feel, Mr. Fagg, in deliberating on this case that both the Plaintiffs and the Defendant were to blame for this accident? A. Yes, sir.

"Q. Well, feeling as you did that both parties were to blame, is that the reason why you arrived at this particular sum of $732.25 and recited in here that the total bills were $1,464.50? A. Yes, sir.

"Q. Mr. Fagg, in answering this special issue about the Seven Hundred Dollars, you have stated that that was half of the amount of the hospital bills, medical bills, etc. Now did you answer that question in the amount of one-half of those bills having in mind that the Plaintiff since he was only half to blame would be entitled to one-half of his expenses? A. Yes, sir.

"Q. Had you decided—that is, by this I mean had the jury decided—that they felt it was the fair thing to do? A. Yes, sir.

"Q. Had the jury decided that you would answer that issue in one-half of the actual amount so as to bring about the result of awarding the Plaintiff one-half of the damages because he was partly responsible for the accident? A. That's right.

"Q. Now the jury, Mr. Fagg, did conclude as a matter of fact that both parties were at fault; is that right? A. That's right."

On cross examination the witness testified:

"Q. After you went back in the jury room I'll ask you to state to the Court whether you took up each question in its order, one at a time and considered it separate and apart? A. Yes, sir."

Appellants' principal case on rehearing is Abrams v. Bradshaw, Tex.Civ.App., 2 S. W.2d 917, affirmed Tex.Com.App., 24 S. W.2d 372, 375. The jury in that case was convicted of misconduct on the following fact findings by Judge Critz, who wrote the opinion for the Commission of Appeals: "Considering only that part of the record that is undisputed in the case at bar, it is conclusively shown that from beginning to end, throughout their long deliberations, which extended over three days, the majority of the jury considered, discussed, and finally answered the several issues presented to them in the court's charge with but one end in view, and that an attempt to accomplish a result, regardless of whether that result had been previously agreed on or not, and regardless of the evidence. It is further conclusively shown that, in considering and answering said issues, a majority of the jury did not consider and answer the issues separately as they found the facts, but they considered, and attempted to answer, all of said questions with reference to their relation to, and effect on, other questions, and especially is this true as to question No. 7, submitting the issue of whether the contributory negligence of the plaintiff was the proximate cause of the injury. It is conclusively shown that at least several jurors were induced to agree to the verdict .by the discussions with reference to the effect of the answers, and what they were told the effect would be, when they otherwise would not have done so; and here it will be remarked that this discussion even went to the extent of one of the jurors telling the jury about another parallel case." Such are not the facts of

the case at bar. Mr. Fagg testified, we "took up each question in its order, one at a time and considered it separate and apart." It thus appears that the jury gave a fair consideration to each question and answered it on the weight and preponderance of the evidence, without relation to the effect of such answer on the other questions. The background of the jury's verdict in the case at bar clearly distinguishes it from Bradshaw v. Abrams, supra.

The motion for rehearing is overruled.