**William J. LE COMPTE, Appellant,**

v.

**Virgil H. SANDERS et al., Appellees.**

No. 14286.

Court of Civil Appeals of Texas.

Houston.

April 30, 1964.

Rehearing Denied May 28, 1964.

Leland B. Kee, Angleton, and James K. Nance, Houston, and Davis, Kee, Mason & Lee, Angleton, and Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellant.

Horace F. Brown and Gay C. Brinson, Jr., Houston, Law Offices of Horace F. Brown, Houston, Bob Owen, Alvin, and Talbert, Giessel, Cutherell & Barnett, Houston, of counsel, for appellees.

WERLEIN, Justice.

This suit was brought by plaintiff, William J. Le Compte, to recover damages arising out of the death of his wife, Annette L. Le Compte, which occurred as a result of a collision at about 2 p. m. on November 6, 1959, between a Ford driven by Mrs. Le Compte and a Buick driven by defendant Sanders, and in which defendant Woods was riding as a passenger. Defendant Sanders, who will be referred to as cross-plaintiff herein, and Woods, who will also be referred to as cross-plaintiff, had each filed a suit against Le Compte. Since plaintiff's suit was prior in time, the suits of cross-plaintiffs were abated and they then filed cross-actions in the present suit. Based upon the jury verdict, which found all issues in favor of appellees, judgment was entered that plaintiff Le Compte take nothing from the defendants, and that said defendants and cross-plaintiff, Sanders and Woods, recover respectively $4,634.00 and $100,000.00 from cross-defendant Le Compte individually and as community survivor and independent executor of the estate of Annette Le Compte. From such judgment plaintiff and cross-defendant Le Compte has duly perfected his appeal.

There were only two living witnesses to the actual collision, namely Sanders and Woods, although one Robert Lozano had observed the Le Compte Ford and the Sanders Buick a few seconds before the impact. The testimony of appellees was to the effect that while Sanders was driving his 1950 Buick in a westerly direction toward Angleton along Farm Road 210, on his right side of the road, a 1956 Ford driven by Mrs. Le Compte in the opposite direction suddenly came over into their lane of traffic in such manner that the Buick struck the righthand side of the Ford. Both appellees testified that they were in their proper lane of traffic at the time of the collision.

Robert Lozano, a witness who had been driving a truck some distance ahead of the Buick driven by appellee Sanders, testified that as the Le Compte Ford approached him the lady driving it looked like she was reaching for something. He further testified that as the car passed him he looked in his rear-view mirror and it looked like the Ford was getting off the road, and then a second later he heard the crash. It is undisputed that the Ford skidded approximately 58 feet before being struck by the Buick, and the evidence indicates that the point of impact between the two vehicles occurred in the north, or westbound, lane of the highway, being the lane traveled by appellees Sanders and Woods. The only evidence that the Buick was not in its proper lane on the correct side of the highway at the time of and before the collision was given by plaintiff's expert witness, Ralph Snyder, who undertook to reconstruct the accident.

Appellant's first three Points, which are briefed together, complain of error on the part of the trial court in admitting into evidence, over timely objection, the opinion testimony of E. B. Hallmark, Jr., and Alvin Doyle, Jr., appellees' expert witnesses, who undertook to reconstruct the accident, to the effect that immediately before the collision the brakes of the Buick were applied and the Buick's right front wheel made a skid mark on its right edge of the pavement and in a parallel line to the highway, and also erred in admitting into evidence cross-plaintiffs' Exhibit B, a sketch prepared by the witness Alvin Doyle, Jr., which showed the Le Compte Ford at an 82° angle and Sanders' Buick entirely on its right side of the highway at the edge of the pavement and in a parallel position to

the highway at the time of the collision, since the testimony of such witnesses took into consideration an erroneous assumption that the right front wheel of the Sanders Buick had made a brake tire mark at the north edge of, and in a parallel line to, the highway immediately before the collision; and because the undisputed factual testimony was that Sanders did not apply the brakes of his Buick on the occasion in question. Appellant also complains of the error of the court in failing to grant plaintiff's motion to disregard and set aside the jury's answer to Special Issue No. 17 to the effect that defendant Sanders did not fail to apply the brakes on his Buick, for the reason that the undisputed testimony shows that the brakes on the Buick were not applied immediately prior to the collision. The court's error in such respects was calculated, appellant says, to influence the jury in their answering the ultimate issue of whether Sanders drove his Buick on his right side of the highway.

Appellant contends that the undisputed testimony shows that the brakes of the Buick were not applied immediately prior to the collision, and that cross-plaintiffs, through their counsel, introduced into evidence plaintiff's Exhibit A, and in the admitted portions of such exhibit, cross-plaintiff Sanders stated unequivocally that he did not in fact apply the brakes on the Buick immediately before the collision.

It is appellant's position that Sanders drove his Buick or some portion thereof on the wrong side of the road, and that Mrs. Le Compte, confronted with Sanders' Buick on her side of the road, found herself in a position of imminent and apparent danger which threatened her life; and being so confronted she attempted to avoid the collision by applying her brakes and turning the Ford to her left side of the road, but at about the same time she took such action, Sanders' Buick attempted to return from its wrong side to its right side of the road and the two automobiles came into collision. Appellant contends that at the moment of the collision Sanders' Buick was at an angle to the highway and its rear was still occupying the wrong side of the road, which was a hard-topped road without a marked center stripe and only 18 feet 6 inches in width.

Appellant asserts that the crucial issue in this case was whether Sanders drove some portion of his Buick on his left side of the highway and was angling back toward his right side immediately before the collision, or whether at such time Sanders' Buick was on its right side of the highway and parallel to the edge of the pavement. The witnesses Hallmark and Doyle testified over appellant's objections that in their opinion the brakes on Sanders' Buick were applied and made a brake tire mark or skid mark on his right edge of the pavement and in a parallel line to the highway. Such testimony supports Sanders' and Woods' testimony that the Buick was on its righthand side of the highway.

The evidence shows that Woods did not know whether or not Sanders applied his brakes. He testified: "I wouldn't think he would have time." At another time he answered: "I don't know." It is uncontroverted that Woods didn't know whether or not Sanders applied his brakes.

It is appellant's contention that his Exhibit A constitutes a judicial admission on the part of cross-plaintiff Sanders to the effect that he did not apply his brakes, and that hence it was error on the part of the trial court to permit cross-plaintiffs' experts, Hallmark and Doyle, to in effect controvert such judicial admission by testifying to the skid mark which they claimed the right front wheel of the Buick made on the right edge of the pavement parallel to the highway, and also erred in admitting cross-plaintiffs' Exhibit B, a sketch prepared by the expert witness, Alvin Doyle, Jr.

In order to determine whether or not Exhibit A does or does not constitute a judicial admission on the part of appellee Sanders, which he may not controvert himself or by his witnesses, it is necessary to

examine not only the contents of such exhibit but the testimony given at the trial by Sanders, and the facts and circumstances leading up to the admission in evidence of Exhibit A and the stipulation made by counsel representing Sanders at the trial.

Prior to the admission of Exhibit A Sanders had testified in person at the trial at length with respect to whether there had been an application of the brakes of his Buick. When asked whether he had attempted to apply his brakes before the collision, he testified: "Yes, I tried to, I don't know whether they got on, or not, I did try to apply the brakes, yes, sir." He also testified: "They may have held, I just don't know." He further testified: "I don't know, I didn't say I did, I just said I tried to, I don't know if I got them on or not." Sanders was being examined as an adverse witness by appellant's counsel. After the above testimony, he was asked with respect to the former trial of the case, and testified: "I just got through telling you whether I got them on or not, just a few minutes ago."

"Q Well, the question Mr. Sanders is 'Then you may have tried to apply your brakes and did not get your brakes in application before the collision, is that right' and your answer was 'That's right.', is that a correct statement?

"A Sure."

The testimony up to this point clearly shows that Sanders did not know whether or not he applied his brakes. He was under the impression that he tried to apply them but did not know whether or not he got the brakes in application before the collision.

Prior to the introduction in evidence of appellant's (Plaintiff's) Exhibit A, appellant's attorney had interrogated Sanders with respect to statements made in such Exhibit, and had gotten before the jury a number of statements contained therein, including the following unresponsive state-

ment made by Sanders: "I know Daddy said he thought I hit the brakes, but I didn't. I didn't have time. I was watching her and she was right on me. There wasn't room to hit the brakes or anything, but just look and she turned sideways and went over." Exhibit A is in the nature of an informal unsworn statement made on November 20, 1959 by Sanders, when interrogated before a shorthand reporter by appellant's investigator. In the exhibit are statements made not only by Mr. Sanders, but also by his wife, Mrs. Sanders, who was present at the time. The court permitted counsel for appellant to interrogate Sanders with respect to such statements and to read the same to the jury. Appellant apparently concedes that up to this point the statements made by Sanders are quasi judicial and do not have the authority and effect of judicial admissions.

At the trial when examined by appellant's counsel as to whether the answers made in plaintiff's Exhibit A were true, Sanders testified that: "I don't know, not necessarily truthful, but I did say it, I was trying to get rid of the men at the time they didn't like it when I said I was on my side of the road, and they kept on hammering and I was trying to get rid of them." Later Sanders testified that the statements were true and that the statement was correctly transcribed. Appellees' attorney, Brown, after further interrogation of Sanders, made the following statement in open court:

"Your Honor, at this time, Mr. Nance has asked that this exhibit— the statement taken on November 20, 1959; he asked that be identified as Plaintiff's Exhibit No. A. At this time we would like to also introduce this into evidence with the exception of three pages. The statement is 31 pages long and 32 taken into account, the last page; and, we will formally state here that this may be introduced in evidence and taken by the jury to the jury room. That we are in agreement with that, and stipulate to it, with the exception of three pages, 22 through 24, that

has nothing to do with the testimony of Virgil Sanders. * * * So outside of page 22 through 24, we agree that this may be introduced in evidence and be glad for the entire statement, with the exception of those pages be read to the jury."

"THE COURT: Do you all agree to that?

"Mr. Nance: No, sir.

"THE COURT: Well, I will read it then, * * * I am going to admit plaintiff's Exhibit A with the exception of pages 22, 23 and 24, inclusive therein of which I will hold my ruling in abeyance, until a later time, at this trial, on those three pages, but the others admitted."

As we view the matter, counsel for appellees was not agreeing to the correctness or accuracy of every statement made in Exhibit A. Counsel stated: "That we are in agreement with that, and stipulate to it, with the exception of three pages * * *." In reading further the statement made by counsel for Sanders, it clearly appears that the agreement was as follows: " * * * We agree that this may be introduced in evidence and be glad for the entire statement, with the exception of those pages, be read to the jury."

It is our view that counsel for appellee Sanders was in effect withdrawing the numerous objections he had been making to the statement, and was permitting it to be introduced in evidence by appellant, with the exception of the three pages in question, as Plaintiff's Exhibit A. The exhibit is marked as Plaintiff's Exhibit—not Cross-Plaintiffs' Exhibit. It was the exhibit that appellant was trying to get in evidence and which the attorney for Sanders finally agreed might be introduced in evidence, thereby waiving all his objections thereto.

In our opinion this interpretation of what occurred is also borne out later in the record, where the attorney for appellant was objecting to any reference to the application of the brakes on the Buick by appellees' expert witnesses on the ground that Sanders had already testified that the brakes were not applied. At such time, the court remarked: "As I recall the testimony by the driver, he didn't know whether he did or whether he did not apply the brakes and I am going to overrule your objection." Thereupon appellant proceeded to make his bill of exceptions after the jury were retired. At this time attorney for appellees said: "They introduced it marked as their exhibit" and the court stated: "I remember all of this."

■ We are of the opinion that Exhibit A, which appellant introduced in evidence, does not constitute a judicial admission of the statements made therein by Sanders, although counsel for appellees joined in introducing such exhibit in evidence and agreed that it might be admitted in evidence and read to the jury. We hold that the trial court did not err in permitting appellees' expert witnesses, Hallmark and Doyle, to testify as to the skid mark which they claim was made by the right front tire of the Buick near the edge of the pavement and parallel thereto, on the Buick's righthand side of the highway. Both of such expert witnesses, in reconstructing the occurrence in question and in locating the vehicles at the time of and immediately before the collision, testified unequivocally as to such skid mark, and wholly independently of the uncertain testimony of Sanders, who in fact repeatedly testified during the trial before the exhibit was admitted that he just didn't know whether or not he applied his brakes.

■ It is our view that the exhibit in question, and especially under the circumstances attendant upon its admission in evidence, does not meet the requirements essential to the character and dignity of a judicial admission as established by our courts. Appellant relies largely upon Griffin v. Superior Insurance Co., 1960, 161

Tex. 195, 338 S.W.2d 415, in which our Supreme Court referred to the case of United States Fidelity & Guaranty Co. v. Carr, Tex.Civ.App., 242 S.W.2d 224, writ ref., and sets out the five rules which must apply before a party's testimony is conclusive against him. We shall undertake to determine whether Sanders' isolated statement or testimony in appellant's Exhibit A so meets the test laid down in such rules as to be conclusive against him.

First, the statement relied upon must be made during the course of a judicial proceeding. Appellees concede that Sanders' affirmation of the correctness of his statement was made during the trial. Nevertheless, the statement at issue was made originally as a part of an unsworn ex parte statement, not in a judicial proceeding.

Second, the statement must be contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony. The application vel non of Sanders' brakes was a fact not essential to a determination of his theory of recovery or defense. Basically, Sanders' theory of recovery was that he was at all relevant times prior to and at the time of the collision in his right-hand lane of traffic. Both he and Woods so testified. Had Sanders admitted that he was in the lefthand lane of traffic, such admission would be contrary to a fact essential to his theory of recovery or defense. His statement with respect to the application of brakes is no more than testimony of an evidentiary, as distinguished from an ultimate, determinative fact.

Third, the statement must be deliberate, clear and unequivocal. If the statement merely contradicts some other portion of the party's testimony, conclusive effect cannot be given thereto, but a fact issue is presented for the determination of the jury as in the case of an ordinary witness. The statement in question merely contradicts other portions of Sanders' testimony previously given at the trial. It is in the nature of additional testimony by Sanders at variance with what he had previously testified.

Fourth, that giving of conclusive effect to the declaration will be consistent with public policy upon which the rule is based. In the Griffin case, supra, the plaintiff had a burden to discharge and introduced no evidence to discharge such burden, but to the contrary, introduced evidence on the point exactly opposite to his contention. In United States Fidelity & Guaranty Co. v. Carr, supra, the court, in considering the drastic nature of the consequences of a judicial admission, said: "It follows that the rule or doctrine should be applied with caution." It is our view that the policy of the rule would be offended by undertaking to give conclusive effect to Sanders' statement.

Fifth, the declaration must be one relating to a fact upon which a judgment in favor of the opposing party may be based. It seems apparent that a judgment for appellant could not be based upon a statement by Sanders that he did not get his brakes applied before the point of impact. The statement of Sanders on which appellant relies might be helpful to appellant as evidence, but it could not be the basis of recovery for appellant. The judicial admission of the party witness, in addition to the requirements of the other four rules, must be a basic ultimate fact itself destructive of the case of the party making the admission and capable in itself of forming the basis of a judgment for his adversary.

In the Carr case, supra, the court, in discussing the rule that a party may be precluded from recovery by his own testimony, pointed out that for the rule to apply it must appear, among other things, that the statement relied upon is clear and positive and that it is not merely a contradiction of some other portion of the party's testimony. In the instant case there can be no doubt that the statement made by Sanders and relied upon by appellant is contradictory of other portions of Sanders' testimony at the trial. See Stanolind Oil &

Gas Company v. State, 1940, 136 Tex. 5, 145 S.W.2d 569; Tackett v. Stephenville State Bank, Tex.Civ.App., 282 S.W.2d 921, writ ref., n.r.e.; Hudson v. Hudson, Tex. Civ.App., 265 S.W.2d 137, writ ref., n.r.e.; McCormick and Ray, Vol. 1, Texas Law of Evidence, Sec. 636, p. 482; Ibid, Vol. 22, Sec. 1128, p. 26. It is evident that the trial court considered such statement as merely testimony in connection with the other testimony given by Sanders at the trial. It seems apparent also that the trial court must have concluded from all the evidence that Sanders simply did not know whether or not he applied his brakes in the second or split second preceding the collision, and that if he did do so the application was automatic and not deliberate.

■ In answer to a hypothetical question asked by counsel for appellees, their witness Doyle testified: "The right front wheel of the Buick automobile made this mark (indicating). This is the location of the front wheel of the Buick." He was then asked upon what he based such conclusion. He then testified that his opinion was based on the line of the left front wheel, which is opposite, and that it was the proper distance apart for the wheel treads of the Buick automobile. Appellant's counsel thereupon moved the court to strike the answer of the witness for the reason that there is nothing in the record that says that the left tire of the Buick was 6 feet from the north edge of the shoulder and no evidence upon which to base the assumed state of facts in the hypothetical question. Thereafter, the court said: "I believe there is evidence." The court thereupon overruled appellant's objection. Appellant excepted to the court's statement as a comment on the evidence. The witness thereupon stated, "Well, in continuing, sir, I never indicated any distance." He also testified, "The wheel tread distance of the Buick happens to be not 6 feet, it happens not to be even five feet. I never made any mention of distance."

It will be noted that the court did not refer to the testimony of any witness and made no comment thereupon. The court's remark was not directed as to whether or not there was evidence that the mark on the north edge of the road and parallel to the road was made by the right front tire of the Buick, but instead was directed to one of the reasons testified to by the witness, Alvin Doyle, for his conclusion. The court's remark was in reply to repeated and repetitious objections by appellant's counsel and merely explained the reason for the ruling.

It is our view that such statement did not constitute a comment on the weight of the evidence or the testimony of any of the witnesses. The present case is distinguishable from the cases relied upon by appellant, such as Cross v. Houston Bus & Terminal Ry. Co., Tex.Civ.App., 351 S.W. 2d 84, writ ref., n.r.e., and Thompson v. Janes, Tex.Civ.App., 227 S.W.2d 330. In the latter case the court said: "I believe this witness would be better qualified to answer the question than anybody else, I know of, * * *." It is clear that such remark by the court was a comment on the weight of the testimony of such witness.

■ If we are mistaken in holding that the statement made by the court did not constitute a comment on the evidence, it is our view that such remark, more or less casually made by the court in explanation of his ruling, was not such as was calculated to cause and probably did cause an improper verdict by the jury, especially in view of the vast amount of testimony and the large number of photographic exhibits showing the place of the collision that were adduced in evidence. Rule 434, Texas Rules of Civil Procedure.

■ We are of the opinion that there is no merit in appellant's contention that there was no evidence or insufficient evidence to support the jury's finding that Sanders did not fail to keep such lookout for vehicles approaching him from the opposite direction as would have been kept by an ordinarily prudent person under the

same or similar circumstances. Appellant has picked out a few statements made by Sanders in support of his contention, but has wholly overlooked numerous statements made by Sanders clearly indicating that he did keep a proper lookout. It is our view that there is ample evidence in support of the jury's finding to Special Issue No. 13, and that such finding is not so against the overwhelming weight and preponderance of the evidence as to be clearly wrong or unjust. In re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660; Bardwell v. Anderson, Tex.Civ.App., 325 S.W. 2d 929, writ ref., n.r.e.; Continental Bus System v. Biggers, Tex.Civ.App., 322 S.W. 2d 1, writ ref., n.r.e.

■ Appellant next complains that the trial court erred in failing to grant appellant's motion to set aside and disregard the jury's finding to Special Issue No. 37 since the amount of $17,000.00 found by the jury for future necessary medical expenses which will in reasonable probability be incurred by Paul V. Woods, was excessive and unreasonable and not supported by the evidence and against the great weight and preponderance of the evidence. We do not agree. The injuries sustained by appellee Woods were exceedingly grave and in part permanent. Appellant does not complain of the amount of $70,000.00 found by the jury for Woods' loss of earning capacity or the $13,000.00 found by the jury for his past medical expenses.

There is ample evidence supporting the finding of the jury to Special Issue No. 37. Dr. R. E. Gray testified that he would like to see appellee Woods at least every two weeks, for the rest of his life; that there might be times when it will be necessary to hospitalize him, and necessary to see him every day; that the charge for an office call was $5.00, but if he had to leave his practice and his patients and go up to Woods' residence, that he would have to charge a legitimate fee, which he would consider somewhere in the neighborhood of $30.00, because it would take him a quarter or a half a day to go up there. He further

testified: "I will bet you he will spend more than 15 days every year in the hospital," and that he would have to spend $100.00 a year for drugs, and maybe more.

■ It is true that Woods was, on the date of the collision, 56 years of age, and that his life expectancy was approximately 16 years at the time of the trial. However, the jury was not bound by the evidence introduced as to appellee Woods' life expectancy, and might have believed that he would live well beyond the same. Chemical Express Co. v. Cole, Tex.Civ. App., 342 S.W.2d 773, writ ref., n.r.e.

From the testimony the jury could have concluded that the doctor's charge in the event that he did have to go to Paul Woods' home to treat him would amount to approximately $30.00 per call every two weeks, and that at that rate Woods would incur an indebtedness for medical expense of some $780.00 per year, or $12,480.00 in 16 years for such item alone. In Renegar v. Cramer, Tex.Civ.App., 354 S.W.2d 663, ref., n.r.e., the jury awarded plaintiff, who was a housewife and part time teacher, $25,000.00 to compensate her for the cost of future domestic help. The appellant complained that under the evidence domestic help was neither required nor contemplated except while she was teaching school, and there was no evidence as to how long she would teach. The court, among other things, stated: "The jury has great latitude in finding the present value of future damages." See Texas Consolidated Transportation Co. v. Eubanks, Tex. Civ.App., 340 S.W.2d 830, writ ref., n.r.e.

Appellant offered no evidence concerning the earning power of money and no instruction was requested by appellant in the court's charge. In Missouri-Pacific R. R. Co. v. Kimbrell, 1960, 160 Tex. 542, 334 S. W.2d 283, our Supreme Court stated:

"It is a well-settled rule in this jurisdiction that the jury has the power to consider as proven any matter that is of common knowledge in the community. 1 McCormick & Ray,

Texas Law of Evidence (2nd ed.), Sec. 156. In our practice, while the jury must assess damages to accrue in the future on the basis of their amount if paid now in cash, still no evidence of the earning power of money must be introduced."

If we add to the sum of $12,480.00, for visits by the doctor, hospitalization for 15 or more days each year, which would probably amount to around $375.00 according to appellant's figures, and drugs in the amount of $100.00 per year, we would have an additional amount of $7,600.00, which added to the $12,480.00 would make a total of $20,080.00, which is an amount in excess of what the jury allowed. We cannot say that the finding of the jury to such issue is not supported by ample evidence or that it is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ Appellant's final Point is to the effect that the trial court erred in overruling plaintiff's motion to disregard the jury answer to Special Issues Nos. 31, 32 and 33, on the ground that such answers are so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust and unfair. Appellant also complains that the trial court erred in failing to grant his motion to set aside the entire jury verdict based upon the jury's conduct in finding "no damages" in answer to said special issues, because the evidence conclusively established as a matter of law that appellant did sustain damages.

The special issues in question had to do with the sum of money that would reasonably compensate appellant Le Compte for pecuniary loss sustained by him as a direct and proximate result of the death of his wife, and the reasonable cost for the funeral of Mrs. Le Compte, and property damage suffered to his Ford automobile. To each of such issues, the jury answered, "None."

In view of the answers of the jury to other issues submitted, the answers to these particular issues were immaterial and irrevelant to the outcome of the case. In Southern Pine Lumber Co. v. Andrade, 1939, 132 Tex. 372, 124 S.W.2d 334, our Supreme Court held in effect that the findings of the jury supported and required the rendition of a judgment in favor of the plaintiff in error, regardless of the extent of the injuries suffered by the defendant in error. The Court said, among other things:

"* * * and in view of these findings, it would have been the duty of the trial court to render the judgment that it did render, even if the jury had answered that defendant in error was damaged in a substantial amount or even if the jury had failed to answer the issue as to damages. That issue became immaterial when the jury found that defendant in error was guilty of contributory negligence that proximately caused the collision.

"There is nothing in the record suggesting that the jury was induced by prejudice or by some improper influence to answer as it did the issue as to damages, unless it is the bare fact that the answer is contrary to the undisputed evidence, which shows that defendant in error suffered severe physical injuries. The action of a jury in answering an issue directly contrary to the undisputed evidence may be cause for suspicion that the answer was induced by prejudice or by improper influence. But we would not be justified in assuming that prejudice or improper influence was responsible for the jury's answers convicting defendant in error of contributory negligence when there is in the record substantial evidence supporting those answers and no evidence that prejudice or improper influence entered into or caused them."

It is our view that the case of Southern Pine Lumber Co. v. Andrade is decisive of appellant's Point of Error. A number of cases by our Courts of Civil Appeals have followed the reasoning of such case. In such cases the appellant contended that a finding of "none" to the damage issue was sufficient to cause a reversal of the case even though the liability issues were found against the appellant. In each of such cases the court held to the contrary under the authority of Southern Pine Lumber Co. v. Andrade, supra. See Doornbos v. Looney, Tex.Civ.App., 159 S.W.2d 155, ref., w. o. m.; Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620, ref., w. o. m.; Hunter v. Texas Electric Ry. Co., Tex.Civ.App., 194 S.W.2d 281, writ ref., aff'd 332 U.S. 827, 68 S.Ct. 203, 92 L.Ed. 402; Guerrero v. Wright, Tex. Civ.App., 225 S.W.2d 609, writ ref., n. r. e.

Judgment of the trial court is affirmed.