Mrs. Ann BECK, Appellant,

v.

ROYAL CROWN BOTTLING COMPANY, Appellee.

No. 15339.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Sept. 5, 1968.

Rehearing Granted Oct. 3, 1968.

Rehearing Denied Nov. 7, 1968.

-----

Brown, Kronzer, Abraham, Watkins & Steely, Bob W. Young, Houston, for appellant.

John Mustachio, Houston, Talbert, Giessel, Barnett & Stone, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a suit for damages for injuries suffered by the appellant, Mrs. Ann Beck, when a soft drink bottle exploded in her hand. Appellee, the defendant in the trial court, was the manufacturer of the drink. Appellant operated a business selling food and drinks, and had purchased the drink for resale on the morning of the explosion.

The case was tried and submitted to the jury upon special issues incorporating the concept of "strict liability". The jury failed to find that the bottle was defective when sold to appellant and failed to find any amount in answer to the damage issue.

Appellant contends that the trial court erred in refusing to grant a new trial because the evidence was insufficient to support the jury's answers to these issues and because these findings were contrary to the great weight and preponderance of the evidence.

On the date of the accident appellant purchased three cases of R C Cola, which were delivered to her place of business by one of appellee's employees. Appellant testified that she had no R C Colas on hand before the delivery. She showed the delivery man where to place the drinks in a storage room where she kept her supplies. She kept the room locked and no one else had a key. She testified that she placed four or five of the bottles in her refrigerator and that she handled them very carefully. She did not bump or hit either of the bottles against anything. These events, with the exception of the fact of the purchase, were established only by her testimony, which was not directly contradicted.

As she withdrew a bottle from the refrigerator to make a sale, the bottle exploded and she suffered injuries. One of her customers testified that she and a friend ordered soft drinks, but she thought that she must have turned her back just as the refrigerator door opened and she did not see the explosion. She heard it, saw the broken bottle, and the injured woman. Appellant's testimony was that no one but herself had access to or handled in any manner the bottle that exploded.

Parts of the bottle were introduced into evidence and were examined by an engineer who qualified as an expert. It was his opinion that the bottle had at some time suffered an impact blow. This impact damage testimony was corroborated by appellee's plant superintendent in charge of production, who stated that the bottle had had a hard blow. The testimony of the expert witness explained the basic scientific facts from which he formed his opinion as to why the impacted bottle, filled under pressure with a carbonated beverage, exploded. The slight change in temperature caused the bottle to crack and the internal pressure then resulted in an explosion. This testimony was corroborated to some degree by appellee's witness.

Appellee's witness testified to plant procedures which involved considerable changes in temperature and resulted in the breakage of many bottles before they were filled. Other bottles broke after they were filled and capped. New bottles were tested by special equipment if there was any reason to suspect them of being defective. The procedure for loading the cases onto the trucks was detailed. The cases are taken off the truck and delivered by the route man. The wood dividers in the cases protect the bottles and prevent them from hitting any other bottle. "It would take a tremendous jolt to make them hit against one another." He testified that he had been with the company twenty years and that he did not know of any bottle having exploded after it had been filled and capped, and had left the bottling line. He testified that the bottle would not fail unless it had some kind of rough treatment, "a blow or something".

Appellee's witness gave this testimony:

"After that the bottles go through this heat, where they experience what they call a thermal shock. If there is a flaw in a bottle, why, chances are it will either break inside of the machine or when it comes out it will have a crack in it, and the inspectors will pick it off. In case the crack is not visible, when the pressure hits it on the filling machine, it will blow up then and there, * * *

"That pretty well eliminates anything that might be wrong with the bottle before it ever gets to the case packing machine."

There was no testimony contradicting or impeaching the testimony of appellee's witness in any material respect. His testimony did not eliminate the possibility that the bottle had sustained an impact blow before it was received at the plant, or while it was in the possession of the delivery man. If his testimony was believed by the jury, however, it was clearly sufficient to support a conclusion that the bottle was not defective when it was delivered to appellant by appellee.

On the other hand, if appellant's testimony had been accepted as true by the jury, the possibility of an impact blow after it came into her possession was completely eliminated. The evidence suggests no reason for the explosion other than that it resulted from an impact blow. While appellant's testimony was not contradicted, the vital fact to which she testified, that the bottle had received careful handling while in her possession, was known only to her, and could not readily have been controverted by appellee. Under such circumstances the jury was not required to accept the testimony of an interested witness even though there was no testimony to the contrary. R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 (1948).

The jury did not find that the bottle was in good condition when it was delivered. The jury refused to find from a preponderance of the evidence that the bottle was in a defective condition when it was delivered. The burden of proving that the product was in a defective condition when it left appellee's hands was upon appellant. McKisson v. Sales Affiliates, Inc., 416 S. W.2d 787 (Tex.Sup.1967); Coca Cola Bottling Company of Houston v. Hobart, 423 S.W.2d 118 (Houston Tex.Civ.App., 14th Dist., 1967, ref., n. r. e.).

While the evidence was sufficient to raise issues of fact for the jury, after reviewing and considering all of the testimony, we cannot say that the verdict of the jury was so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

The evidence as to injury and damage is such that the failure of the jury to find some amount of money in answer to the issue on damages was clearly wrong. Since the answers made to the previous issues failed to establish a basis for a judgment in favor of appellant, the damage issue became immaterial, and the answer made to the issue on damages did not result in the rendition of an improper judgment. Southern Pine Lumber Co. v. Andrade, 132

Tex. 372, 124 S.W.2d 334 (1939); Le Compte v. Sanders, 378 S.W.2d 861 (Houston Civ.App., 1st Dist. 1964, error ref., n. r. e.).

The Trial Court did not err in denying appellant's motion for new trial. The judgment is affirmed.

### On Motion for Rehearing

On reconsideration, in response to appellant's motion for rehearing, we conclude that the answers made by the jury to Special Issue No. 1 and Special Issue No. 5 are so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Special Issue No. 1 reads: "Do you find from a preponderance of the evidence that the Royal Crown Bottle was in a defective condition at the time it was delivered to the premises of the plaintiff?" The jury answered this issue "We do not." A careful review of the record convinces us that the only evidence concerning the condition of the bottle "at the time it was delivered" was the testimony that bottles of this type would not explode unless they suffer impact damage, opinion testimony based on an examination of fragments of the bottle and the testimony of the appellant concerning the manner in which the bottle was handled after it came into her possession. Her testimony was that she handled the bottles very carefully and that she did not bump or hit them against anything and that no one else had access to the bottles during the period of a few hours from the time of delivery to the time of the explosion. Pieces of a bottle, identified by appellant as being the one causing her injury, were admitted into evidence. Both the expert witness called by appellant and the defendant's plant production manager found a spot on the bottle where it had sustained impact damage. The manager, testifying with reference to the spot on the bottle, stated that it had sustained a hard blow. The engineer testified that he saw an indentation about mid-way between the ends

of the bottle that appeared to him to be the result of an impact blow. The indentation was small on the outside of the bottle and increased in diameter until it reached approximately one-half inch on the inside of the bottle. A small particle of glass was found which fitted smoothly into the indentation. It was his opinion that the "small piece was broken away from the inside of the bottle by an impact blow, a sharp quick blow delivered to the outside of the bottle." He testified that once the bottle received the blow, the surface of the bottle and the cross sectional area of the bottle has high stresses locked up in it. Then if it is cooled or heated, the stresses are relieved and cracking is caused. He explained that if a bottle is removed from the 40° temperature of a refrigerator, it begins to warm immediately and, as it warms, it changes shape and size. Then if such a bottle were shaken carbon dioxide would be released generating pressure. This pressure would tend to burst the glass in an outward direction.

An examination of the pieces of the bottle substantiates the testimony that a piece of the bottle broke away on the inside of the bottle. Even to a non-expert it would appear to have resulted from a blow to the outside of the bottle. It is also apparent that the cap on the bottle was not damaged or tampered with in any manner. The evidence requires a conclusion that the initial damage to the bottle was caused by a sharp blow at a particular spot on the bottle.

However, appellant's case, insofar as the question of defective bottle is concerned, is dependent on her own testimony. She identified the bottle in evidence as being the one which exploded. She testified as to the care which it received while in her possession.

■ Appellant does not question the general rule that the testimony of an interested witness merely raises a fact issue for the jury. She does point out, however, a well established exception to this rule, which is that where the testimony of such

a witness is not contradicted by any other witness, or attendant circumstances, and the testimony is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1942); McGuire v. City of Dallas, 170 S. W.2d 722 (Tex.1943); Ex Parte Rohleder, 424 S.W.2d 891 (Tex.1967).

The evidence reflects that the doctor called by appellant testified that his records reflect that appellant was injured while she was opening soft drinks when one exploded. The doctor testified that he secured the information found in the history from appellant. His original record was admitted into evidence. This evidence casts some doubt on appellant's testimony that the bottle introduced into evidence was the same bottle which exploded causing her injury. It is also inconsistent with appellant's testimony that the bottle exploded as she was removing it from the refrigerator. At one point appellant testified that she went into the storeroom and got four or five bottles of R. C. Cola and put them in the cooler. Following this testimony in answer to a question concerning how she handled "it", she testified: "I picked it up one bottle at a time and put it in my hand and took it and put it in the refrigerator. I didn't bang it. I didn't drop it." On cross-examination she testified:

Q I think your testimony was that you got one R. C. and put it in the refrigerator. Is that right? You picked up one, put it in your hand—

A At the time that he brought them, I took in about four to put in the refrigerator, four or five.

Q Oh, you took four?

A But not at one time, no.

Q Well, did you take them one at a time?

A Yes, one in each hand.

Q One in each hand, and made two trips?

A (The witness nodded.)

There is no real inconsistency in the testimony. While her first statement was not clear, it is consistent with her second statement. If she picked up one bottle, she would not "put it in my hand, it was already in her hand. She might well have *put* it in her *other* hand and then have picked up another bottle with her free hand as she later explained.

■ While we do not feel that this slight inaccuracy or contradiction would be sufficient to withdraw the case from the exception to the general rule set out in Cochran v. Wool Growers Central Storage Co., supra, this inaccuracy and the prior inconsistent statement require the application of the general rule that the testimony of an interested witness merely raises a jury issue since the credibility of the witness and the weight to be given his testimony is ordinarily a matter for the jury.

■ Nevertheless the testimony of appellant cannot be entirely disregarded. It is the duty of this Court, in determining whether the answers of the jury are contrary to the great weight of the evidence, to consider all of the testimony.

Appellee has produced credible evidence that it would be quite unlikely that a bottle, which has suffered an impact blow such as the one in evidence sustained, would survive the testing and inspection processes carried out routinely in its plant. This evidence is uncontroverted, and, in view of the jury findings, we accept as proven the fact that at the time the bottle was placed in the wooden crate it was in good condition. There is testimony that the crates are manually stacked on pallets, thirty cases to a pallet. A man with a tow motor then takes the pallet to the storeroom where the pallets are stacked three tiers high. A man operating a fork lift then, ordinarily, loads individual delivery vehicles with the pallets. The delivery man

 

then drives the truck on his route and removes individual cases of the soft drinks and places them on a small cart and wheels them into the customer's place of business. There is evidence that one of the bottles, after it has been filled and capped, does not explode unless it receives "some kind of rough treatment, a blow or something," and that the bottles in the case will not hit against each other unless the case receives a "tremendous jolt."

There is no evidence as to the treatment actually received by this bottle after it was packed in the case until it reached appellant's place of business. It can readily be seen that the opportunity for rough treatment during the process of stacking the cases on the pallets, towing the pallets to the storeroom and stacking them, removing the pallets from the stack with the fork lift, or during the period of time the pallet was on the delivery truck, has not been eliminated by direct testimony, or inference from other testimony. There is no evidence contradicting the testimony of appellant, which, if believed, established that the bottle was in defective condition when it was received by appellant.

We do not agree with appellant's contention that this is a case for the application of the rule stated in Dixon v. Burling, 277 S.W.2d 957 (Tex.Civ.App., 1st Dist., 1955), as follows: "* * * The jury was of course entitled to disregard this testimony of an interested witness, but lacking some proof, a jury, while not bound to accept the testimony of an interested witness, is not entitled to make an opposite finding. * * *" Compare McShann v. Richardson Ind. School Dist., 341 S.W.2d 691 (Ft. Worth Civ.App., 1960).

However, there was testimony, although from an interested witness, which, for the most part, was free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, and was clear, direct and positive, and which was sufficient to support an affirmative answer to Special Issue No. 1. There was no evidence to support the negative answer returned by the jury. The jury issue was created only by reason of the fact that the credibility of the witness was at issue. Under such circumstances we hold that the answer to Special Issue No. 1 was so contrary to the weight of the evidence as to be clearly wrong.

In view of our discussion of Special Issue No. 1, and the conclusion we have reached in regard thereto, the answer "none" to Special Issue No. 5, being contrary to the undisputed evidence, becomes a material issue, and the answer must be set aside.

The motion for rehearing is granted, and the judgment of this Court previously entered is withdrawn. The judgment of the Trial Court is reversed and the case is remanded.